1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                          **DISTRICT OF NEVADA**

10

11  UNITED STATES OF AMERICA,              )
                                            )
12                    Plaintiff,            )     2:05-CR-0445-RCJ-PAL
                                            )
13  vs.                                     )
                                            )     **O R D E R**
14  JOSE ALFREDO HERNANDEZ-                 )
    BAILON,                                 )
15                                          )
                      Defendant.            )
16                                          )

17       Before the Court for consideration is Defendant Jose Alfredo Hernandez-Bailon's

18  ("Defendant" or "Hernandez-Bailon") Objections to the Report and Recommendation issued

19  by the Magistrate Judge Leen (#26) which recommends that the Court deny Defendant's

20  Motion to Dismiss Based on a Prior Unlawful Deportation (#14).  The Court has reviewed all

21  relevant pleadings on file and has heard oral argument on behalf of all parties.  IT IS

22  HEREBY ORDERED that Defendant Hernandez-Bailon's Objections to the Report and

23  Recommendation issued by the Magistrate Judge Leen (#26) are *overruled*, and Defendant's

24  Motion to Dismiss Based on a Prior Unlawful Deportation (#14) is *denied*.

25                          Page 1 of  9

**BACKGROUND**

On June 10, 2003, Defendant Hernandez-Bailon was charged with Possession of Stolen Property in violation of Nevada Revised Statutes ("NRS") § 205.275. He pleaded guilty to that offense on September 26, 2003. As a result, Defendant received a suspended sentence of 12 to 32 months incarceration and was placed on three years probation. Hernandez-Bailon was subsequently arrested for Aiming a Firearm at a Human Being in Las Vegas, NV. Consequently, on July 5, 2004, the Bureau of Immigration and Customs Enforcement ("ICE") placed a detainer on him. On July 12, 2004, a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent") was issued against Hernandez-Bailon alleging that (1) he was not a citizen or national of the United States; (2) he was a native and citizen of Mexico; (3) he entered the United States at or near Nogales, AZ on or about January 1, 1993; (4) at that time he was not admitted or paroled after inspection by an Immigration Officer; (5) that he was not admitted for permanent residency; (6) he was convicted on September 25, 2003, in Nevada for Possession of Stolen Property, in violation of NRS § 205.275; and (7) for that offense he was sentenced to a period of confinement for a maximum of 32 months and a minimum of 12 months. Hernandez-Bailon was served with this Notice of Intent on October 16, 2004, while he was serving a Nevada state sentence imposed on September 29, 2004, for an additional offense, Attempted Theft and Placing Graffiti. Hernandez-Bailon indicated he wanted to contest his deportability by marking the appropriate box on the Form I-851 Certificate of Service for the Notice of Intent, which he returned to ICE.

According to Hernandez-Bailon, he was released to the ICE detainer on November 16, 2004. That same day, Hernandez-Bailon's attorney, Rolando Velasquez, filed a bond redetermination request, which was set for hearing the next morning. A copy of the bond

request was served on ICE the same day it was filed. Mr. Velasquez appeared at the bond redetermination hearing on November 17, 2004, but was told by the ICE Assistant Chief Counsel that Hernandez-Bailon was no longer in Immigration custody. Also on November 17, 2004, the Final Administrative Removal Order was signed indicating that Hernandez-Bailon was to be deported pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). The Final Administrative Removal Order was served on Hernandez-Bailon on November 18, 2004. The Record of Persons and Property Transferred, Form I-216J, indicates that Hernandez-Bailon was removed on November 18, 2004. On November 22, 2004, Mr. Velasquez became aware of Hernandez-Bailon's removal, and wrote a letter to ICE for inclusion in the administrative file, arguing that Hernandez-Bailon's removal was in error.

On November 23, 2005, Defendant Hernandez-Bailon was charged in a criminal indictment with one count of Unlawful Reentry by a Deported Alien in violation of 8 U.S.C. § 1326. The indictment charges that he was deported and removed from the United States on or about November 18, 2004, and between June 10, 2005, and October 27, 2005, he returned and was found in the United States without authorization.

On January 6, 2006, Defendant filed a Motion to Dismiss Based on a Prior Unlawful Deportation (#14). Defendant argues that his original deportation violated his due process rights and that he was prejudiced thereby. On March 27, 2006, Magistrate Judge Leen entered her Report and Recommendation (#23). The Magistrate Judge found that Defendant was removed prior to the expiration of fourteen days from the final order of removal, contrary to statute, and thus Defendant did not receive an adequate opportunity to seek judicial review. She also found that the mischaracterization of Defendant's state conviction as an aggravated felony and his premature removal constituted due process violations. However, the Magistrate found that Hernandez-Bailon was not prejudiced by these due process violations

because he cannot establish that he had plausible grounds for relief from removal through voluntary departure, cancellation of removal, or waiver of excludability.

## DISCUSSION

The principal issue now before the Court is whether Defendant Hernandez-Bailon was prejudiced by a deprivation of his due process rights in conjunction with his deportation. The Magistrate Judge found that a due process violation occurred, but Defendant did not suffer prejudice therefrom. Defendant now argues that he did in fact suffer prejudice because he was entitled to removal through voluntary departure.[1]

### I.   Legal Standard

To attack the validity of a prior deportation order in this context, the Ninth Circuit has held that a defendant must demonstrate (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the violation. See, e.g., United States v. Proa-Tovar, 975 F.2d 592, 594–95 (9th Cir. 1992) (en banc). Therefore, if Hernandez-Bailon cannot establish prejudice, the Court must deny his Motion to Dismiss Based on a Prior Unlawful Deportation (#14), even assuming a due process violation occurred.

When a petitioner moves to dismiss an indictment under 8 U.S.C. § 1326 based on a violation of due process in the underlying removal proceeding, he must show that prejudice resulted from the violation of his due process rights. See United States v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001). "To establish prejudice, petitioner does not have to show

---

[1] Defendant does not contend that he was entitled to cancellation of removal or waiver of excludability, and thus this Court will only consider whether he had a plausible right to voluntary departure.

Page 4 of 9

that he actually would have been granted relief. Instead he must only show that he had a 'plausible' ground for relief from deportation." Id. (citation and internal quotation omitted).

## II.     Viability of Voluntary Departure

### A.     Due Process Violations

The Magistrate Judge found that Defendant's due process rights were violated during the underlying deportation proceeding:

> Hernandez-Bailon was placed in expedited administrative removal proceedings governed by 8 U.S.C. § 1228 as an alien not admitted or paroled after inspection or lawfully admitted for permanent residence who had been convicted of an aggravated felony. The final administrative removal order was served on Hernandez-Bailon on November 18, 2005, the same day he was physically removed, without affording him the right under the statute to seek judicial review of the final administrative order within fourteen calendar days after the date of its issuance. The expedited administrative removal proceeding was, therefore, procedurally flawed to the extent that it eliminated Hernandez-Bailon's right to judicial review.

(Magistrate's Report and Recommendation at 15.)

This Court agrees with the Magistrate's determination that Defendant's guilty plea to Possession of Stolen Property in violation of NRS § 205.275 did not constitute an aggravated felony.  Neither party provided the Court with a plea agreement or transcript of the plea hearing indicating the precise elements of the offense to which Defendant pleaded guilty. The judgment of conviction only states that Hernandez-Bailon pleaded guilty to the crime of Possession of Stolen Property and received a suspended sentence of 12 to 32 months. Applying the modified categorical approach, it is impossible to determine from the documents on record that Defendant pleaded guilty to the aggravated felony generically described as a "theft offense."  See United States v. Corona-Sanchez, 291 F.3d 1201, 1211

(9th Cir. 2002) (en banc); Chang v. INS, 307 F.3d 1185, 1189 (9th Cir. 2000). Because it is impossible to conclude that Defendant pleaded guilty to an aggravated felony, the Government violated his due process rights by employing expedited administrative removal proceedings under 8 U.S.C. § 1228(b) rather than providing Defendant with 14 days after the issuance of the final administrative order in which to seek judicial review as required by 8 U.S.C. § 1228(b)(3). Therefore, this Court agrees with the Magistrate that Defendant Hernandez-Bailon's due process rights were violated. However, Hernandez-Bailon must also show that he was prejudiced by the due process violation.

**B.     Prejudice**

To establish prejudice, Hernandez-Bailon argues that he had a plausible ground for relief through voluntary departure. Voluntary departure is a form of discretionary relief. It is a privilege created by Congress, and aliens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection. Munoz v. Ashcroft, 339 F.3d 950, 954 (9th Cir. 2003). "[V]oluntary departure is intended, in part, to allow an alien faced with removal to have a reasonable period of time before departing to make arrangements for any interests he or she may have in the United States." Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1167 (9th Cir. 2004). The Ninth Circuit has held that although the agency has great latitude in exercising its discretion to grant or deny a request for voluntary departure, the agency "must weigh both favorable and unfavorable factors." De la Luz v. INS, 713 F.2d 545 (9th Cir. 1983). The agency "is required to weigh favorable and unfavorable factors by evaluating all of them, assigning weight or importance to each one separately and then to all of them cumulatively." Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir. 1994) (internal

citations and quotations omitted).  The Ninth Circuit has identified the following relevant factors for consideration in determining whether to grant voluntary departure:

> Favorable factors include: family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the existence of business or property ties; evidence of value and service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character. . . .
> Unfavorable factors include: the nature and underlying circumstances of the exclusion or deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident.

Id. at 852 n.8.

There are some factors that weigh in Defendant Hernandez-Bailon's favor.  First, Defendant has family ties in the United States.  His immediate family, including both of his children, lives in the United States.  Second, Defendant was only eight or nine years old at the time he first entered the United States.  He was twenty years old at the time of removal.  Third, Defendant, though relatively young, had a stable employment history in the United States.

Although the factors mentioned above weigh in Defendant's favor, they are ultimately outweighed by several unfavorable factors.  Defendant, though only twenty years old at the time of removal, had an extensive criminal history.  At the time of removal, Defendant had served six grants of probation for juvenile charges, and had been placed on probation as an adult for the felony conviction of Possession of Stolen Property.  Four days after the end of his felony probation, Defendant was arrested for burglary and applying graffiti.  Defendant

spray-painted gang graffiti on several residences and broke into vehicles. Less than two months later, Defendant was again arrested, this time for aiming a firearm at another person.

Defendant argues that his strong family connections in the United States could plausibly outweigh his criminal history in the mind of some court, and thus he is entitled to relief. See United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000) (holding that voluntary departure is appropriate if the defendant demonstrates that he had "a plausible ground for relief from deportation" (internal quotations omitted)). This Court disagrees. Defendant has not provided evidence to demonstrate that his removal will constitute family difficulties beyond those ordinarily present in deportation cases. While Defendant's two children live in the United States, Defendant is not their primary care giver. Due to Defendant's criminal history, the children's mother and grandparents care for them. Even if Defendant provides some financial support for his family, this, standing alone, does not constitute the "extreme hardship necessary to justify relief. . . . [S]omething more is required to remove the case from the 'typical' hardship category." Id. at 1082. While documentation of severe non-financial family consequences might persuade a court to grant relief, Defendant has simply not presented any evidence that his family will suffer extraordinary emotional trauma if he is deported. Cf. Id. (granting relief because defendant demonstrated "extreme hardship" because he was needed to raise his younger siblings because his mother was in very poor health in the United States). In this case, Defendant's children live with their mother and grandmother, and thus would not suffer undue hardship so as to outweigh the extensive evidence of Defendant's bad character and criminal history. Defendant Hernandez-Bailon's

criminal history is extensive, and while his family will surely suffer following Defendant's removal, such suffering is not so extraordinary as to constitute extreme hardship in this case.

These factors convince the Court that Defendant Hernandez-Bailon did not have plausible grounds for receiving voluntary departure as relief from removal. Therefore, even assuming that Defendant's due process rights were violated in conjunction with the removal proceedings, he failed to demonstrate that he suffered any prejudice therefrom.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Hernandez-Bailon's Objections to the Report and Recommendation issued by the Magistrate Judge Leen (#26) are *overruled*, and Defendant's Motion to Dismiss Based on a Prior Unlawful Deportation (#14) is *denied*.

DATED: AUGUST 8, 2006

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE